IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM THOMAS COATS,

    Plaintiff,                  No. CIV S-08-0476 JAM GGH P

    vs.

JOHN McGUINESS, et al.,          ORDER AND

    Defendants.            FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' August 11, 2009, motion for summary judgment. On September 11, 2009, plaintiff filed an opposition. For the following reasons, the court recommends that defendants' motion be denied.

        Also pending is plaintiff's September 11, 2009, motion for an extension of time to file a supplemental opposition pursuant to Fed. R. Civ. P. 56(f). For the reasons discussed below, this motion is denied.

II. Summary Judgment Standards Under Fed. R. Civ. P. 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

1


matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see

2

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On April 16, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

1988).

III. <u>Discussion</u>

      A. <u>Legal Standard</u>

Plaintiff alleges that while he was housed at the Sacramento County Jail, defendant Cabrera choked him while defendant Hailey stood by and watched. At the time of the alleged incident, plaintiff was housed at the jail as a pretrial detainee.

A pretrial detainee may not be subjected to punishment or the excessive use of force. <u>Bell v. Wolfish</u>, 441 U.S. 520, 536-37, 99 S.Ct. 1861 (1979); <u>Pierce v. Multonomah County</u>, 76 F.3d 1032, 1042-43 (9th Cir.1996). The Fourth Amendment sets the "applicable constitutional limitation for considering claims of excessive force during pretrial detention." <u>Lolli v. County of Orange</u>, 351 F.3d 410, 415 (9th Cir.2003) (quoting <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1197 (9th Cir.2002)).

Claims of excessive force during pretrial detention are analyzed under the Fourth Amendment's "objective reasonableness" standard; that is, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Lolli</u>, 351 F.3d at 415 (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989)) (internal quotations omitted). "In considering an excessive force claim, we balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." <u>Lolli</u>, 351 F.3d at 415 (internal quotations omitted).

      B. <u>Factual Background</u>

Defendants Hailey and Cabrera have different memories of the events leading up to the alleged incident. Their memories regarding what happened during the alleged incident are similar.

In his declaration submitted in support of the summary judgment motion, defendant Hailey states that on August 29, 2007, he and defendant Cabrera were supervising

4

laundry exchange on 4 East when a carton of milk struck the control room window. Hailey declaration, ¶ 2. Defendants left the control room to investigate. Id., ¶ 3. Defendants walked toward the 100 pod and went inside. Id., ¶ 4. Inmate workers then pointed them to cell 101. Id. Defendant Hailey remembers that defendant Cabrera then entered the cell while he stood outside. Id., ¶ 5. Defendant Hailey could see in the cell through the open cell door. Id. Plaintiff was the only inmate in the cell. Id. He was lying on his bunk with his back facing toward them, facing toward the wall. Id. According to defendant Hailey, defendant Cabrera repeatedly told plaintiff to get up, but he did not respond. Id., ¶ 6. Defendants then both walked toward plaintiff's bunk, but defendant Hailey stood by the cell door to hold it open. Id., ¶ 7.

Defendant Hailey remembers that as defendant Cabrera approached plaintiff, he (plaintiff) turned his body very quickly toward defendant Cabrera. Id., ¶ 8. Defendant Cabrera reached out toward plaintiff's chest, and grabbed plaintiff by the shirt. Id., ¶ 8. Defendant Cabrera asked plaintiff why he threw the milk. Id., ¶ 9. Plaintiff answered, "I didn't" and "It wasn't me man." Id., ¶ 9. Plaintiff appeared to have no difficulty speaking. Id. Plaintiff's cellmate, inmate Caeser, then walked into the cell. Id., ¶ 10. Defendant Cabrera asked Caeser if he knew who had thrown the milk, and Caeser admitted that he had done it. Id. Defendants then escorted inmate Caeser out of the cell. Id., ¶ 11.

In his declaration submitted in support of the summary judgment motion, defendant Cabrera states that on August 29, 2007, inmate Caeser pressed the emergency button in his cell and said he needed to be let out of his cell right away. Cabrera declaration, ¶ 2. The door to plaintiff's cell was opened remotely and defendant told Caeser to report to the control room. Id., ¶ 3. Defendant Cabrera then saw a carton of milk splatter the control room window. Id., ¶ 4. Defendant Cabrera left the control room to investigate. Id., ¶ 5. He walked into the 100 pod where inmates directed him to cell 101. Id., ¶ 5. When he entered the cell, defendant Cabrera saw plaintiff lying on the lower bunk, facing away from him toward the wall. Id. Plaintiff was the only inmate in the cell. Id.

1   Defendant Cabrera stood by the door for approximately 6 or 7 second, instructing
2 plaintiff to get up. Id., ¶ 6. Plaintiff did not respond. Id. Defendant Cabrera then approached
3 plaintiff. Id., ¶ 7. At that time, plaintiff suddenly rolled toward him, threw a blanket off his
4 head, and appeared to be attempting to get up quickly. Id. Because the movement was so
5 sudden, defendant Cabrera placed his hand on the center of plaintiff's chest to keep him from
6 moving forward. Id. Defendant asked plaintiff why he had thrown the milk. Id., ¶ 8. Plaintiff
7 appeared to be surprised and responded, "What?" and "I don't know." Id.

8   At that point, defendant Cabrera realized that plaintiff had been asleep and
9 probably had not thrown the milk. Id., ¶ 9. He then saw inmate Caeser and defendant Hailey
10 standing by the door. Id. Defendant Cabrera asked Caeser if he had thrown the milk, and he
11 admitted that he had. Id. Defendants then took Caeser to the 4 East classroom. Id., ¶ 10.

12   In his verified opposition, plaintiff claims that on August 29, 2007, defendants
13 entered his cell. Plaintiff alleges that as he rolled over in his bed, defendant Cabrera began
14 choking him. Plaintiff alleges that defendant choked him so violently that he almost passed out.
15 Plaintiff alleges that defendant Hailey witnessed the entire attack but did not intervene.

16   C. Analysis

17   *No Evidence of Excessive Force*

18   Defendants first move for summary judgment on grounds that plaintiff suffered no
19 injury as a result of the alleged excessive force. Defendants argue that there is no medical
20 evidence supporting plaintiff's claim. In support of this argument, defendants refer to the
21 declaration of Nurse Teri Krug attached to their opposition. Nurse Krug states that on Saturday
22 September 1, 2007, three days after the incident, she was conducting nurse's sick call on the
23 fourth floor of the jail. Krug declaration, ¶ 5. On that morning, she saw plaintiff. Id. Plaintiff
24 told her that he had been assaulted by staff and "throttled" the previous Wednesday. Id., ¶ 5. He
25 did not complain of any particular pain, injury or ailment. Id. Because he stated that he had been
26 held down with hands on his throat, Nurse Krug examined his neck and throat. Id. Nurse Krug

saw no redness, bruising, swelling or deformity of any kind on his neck or throat.  Id., ¶ 7, ¶ 8.

Defendants also refer to the declaration of Dr. Carl Bourne attached to their opposition.  From 1990-2008, Dr. Bourne worked as a part time physician at the Sacramento County Jail, where he treated plaintiff in the fall of 2007.  Bourne declaration, ¶ 4.  Dr. Bourne states that typical symptoms of strangulation include bruising around the neck, hoarseness of voice and petechial hemorrhaging visible to the eyes.  Id., ¶ 7.  Plaintiff's medical records indicate that when he saw the nurse on September 1, 2007, he had none of these symptoms.  Id., ¶ 7.  Instead, beginning on September 7, 2007, plaintiff began to complain of neck pain, reduced range of motion, and tingling and burning sensations into his right shoulder and arm.  Id.

On October 10, 2007, an x-ray of plaintiff's cervical spine was ordered.  Id., ¶ 8.  The x-ray was performed October 11, 2007.  Id.  On October 24, 2007, plaintiff saw Dr. Bourne in sick call.  Id., ¶ 9.  At that time, plaintiff complained of pain in his neck and right shoulder.  Id.  Plaintiff's x-ray revealed the presence of degenerative disk disease at the disc spaces between C4-5 and C6-7, with anterior and posterior osteophyte formation.  Id.  These findings were consistent with plaintiff's complaints of radiating neck pain and reduced range of motion.  Id.  Degeneration of the bone structure in the cervical spine can impinge upon or constrict nerves, thereby causing reduced range of motion as well as pain, numbness, burning and tingling sensations that radiate down the extremities.  Id.

Degenerative changes in the cervical spine with osteophyte formation is a chronic condition that takes years to develop.  Id., ¶ 10.  The degenerative changes and osteophyte formations found in plaintiff's x-ray could not have been found by a single traumatic event occurring only a few weeks earlier.  Id.

In opposition, plaintiff argues that he suffered injuries after the attack, including the neck and back pain he suffered was caused by the choking.  Plaintiff has attached several pages from his Sacramento County Jail medical records to his opposition in support of this claim.  The entry from September 1, 2007, by Nurse Krug states,

> PT presents at nsc c c/o "I was assaulted by staff." States I was "throttled" on Wed.  States was held down c hands @ his throat.  Denies loc. upon exam, no injury/redness or swelling noted to neck/throat. States has not mentioned incident to any staff for fear of reprisal.  Will refer to psych for eval/ f/u.  Explained to PT Nursing Staff are mandated reporters.  Will proceed per Protocol....Nsg. Supervised, states will report incident per protocol.

Plaintiff's Opposition, p. 94-95 of 100.

The court has reviewed the medical records attached to plaintiff's opposition. They contain several entries noting plaintiff's complaint of the assault.  However, these records do not state that plaintiff had any physical injuries as a result of the assault, such as neck redness, etc.  These records also do not state that the neck and back pain he suffered was caused by the alleged choking.  In his opposition, plaintiff also claims that photographs of his injuries were taken.  However, these photographs are not attached to his opposition or located elsewhere in the record.

In the Eighth Amendment context, the Supreme Court has stated that the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is present.  Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992).  In Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002), the Ninth Circuit strongly suggested that a prisoner need only prove that the use of physical force was more than de minimis.

Plaintiff alleges that defendant Cabrera choked him without good reason.  If this is true, then defendant Cabrera used excessive force.  Because the focus in an excessive claim is the degree of force used rather than the degree of injury, defendants are not entitled to summary judgment on grounds that plaintiff suffered no physical injury.

While plaintiff has presented no expert evidence that the neck and back pain he later suffered was caused by the alleged choking, the court does not agree with defendants' implicit argument that so long as a choking leaves no physical marks, there can be no claim for excessive force.  There are various degrees of choking.  A person could hold someone's neck

8

without leaving red marks.  Assuming plaintiff's version of events, while defendant may have left no marks, the injury plaintiff suffered was the pain and difficulty breathing he suffered during the incident itself.  In addition, in his opposition plaintiff alleges that he was only able to speak in a whisper after the incident.  Opposition, court file no. 80, main document, p. 19 of 100. If defendant Cabrera choked plaintiff to such a degree that he could only speak in a whisper, then plaintiff suffered a physical injury.

*Defendant Hailey*

Defendants next argue that defendant Hailey is entitled to summary judgment because he did not use excessive force against plaintiff.  Defendants argue that while an officer may be held liable for failing to intercede when fellow officers violate the constitutional rights of citizens, he can be subject to liability only if he had an opportunity to intercede.  See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent Eighth Amendment violation may be basis for Eighth Amendment liability).  Defendants argue that defendant Hailey did not have an opportunity to intercede because he did not witness the excessive force.  Defendants argue that defendant Hailey did not see defendant Cabrera choke plaintiff.  Defendants also argue that defendant Hailey was able to hear plaintiff speak clearly throughout the incident.

In his opposition, plaintiff argues that defendant Hailey stood by while defendant Cabrera choked him.  Whether defendant Hailey had an opportunity to intervene is a disputed material fact.  Accordingly, defendant Hailey is not entitled to summary judgment on this ground.

Defendants next argue that defendant Hailey is entitled to summary judgment because he is entitled to qualified immunity.  In resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officer's actions violated a constitutional right and (2) whether a reasonable officer could have believed that his conduct was lawful, in light of clearly established law and the information the officer possessed.  Anderson v. Creighton, 483 U.S. 635, 107 S.Ct.

3034 (1987). Although the Supreme Court at one time mandated that lower courts consider these two questions in the order just presented, more recently the Supreme Court announced that it is within the lower courts' discretion to address these questions in the order that makes the most sense given the circumstances of the case. Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, --- L.Ed.2d ----, 2009 WL 128768 (January 21, 2009).

Defendants argue that defendant Hailey is entitled to qualified immunity because he had no notice that plaintiff was being choked and nor did he see plaintiff being choked. Defendants argue that under these circumstances, no reasonable officer would have known that his actions violated clearly established law. As discussed above, whether defendant Hailey witnessed the alleged choking is a materially disputed fact. Assuming he witnessed the choking, and assuming he had time to intervene, no reasonable officer would have believed that not intervening was constitutional. For these reasons, defendant Hailey is not entitled to qualified immunity.

*Limit on Plaintiff's Claim for Damages*

Defendants also argue that plaintiff's damages claims should conform to the undisputed facts. Defendants argue that any injuries plaintiff suffered to his neck and back were caused by a chronic condition rather than any events at the jail. In essence, defendants argue that they are entitled to summary judgment as to the neck and back injuries plaintiff began complaining of in mid October 2007. While the court agree agrees that plaintiff has offered no expert evidence demonstrating that the neck and back pain he suffered were caused by the alleged choking, issues related to proof of damages are more appropriately raised at trial rather than in summary judgment. For that reason, defendants should not be granted summary judgment as to plaintiff's claim for damages regarding his neck and back pain.

Defendants next argue that plaintiff's claim for mental and emotional damages should be dismissed because he suffered no physical injury. The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or

10

other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  The physical injury "need not be significant but must be more than de minimis." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir.2002).  The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages.  Id. at 630.

In the instant case, plaintiff alleges that defendant Cabrera choked him so hard that he almost passed out.  Plaintiff also alleges that he could only speak in a whisper after the incident.  While plaintiff may not have suffered any long term injuries as a result of the alleged attack, these allegations demonstrate that plaintiff suffered more than de minimis physical injury at the time of the attack.  Accordingly, defendants should not be granted summary judgment as to plaintiff's claims for mental and emotional distress.

Defendants also move for summary judgment as to plaintiff's claim for punitive damages.  Punitive damages are appropriate following a finding that the defendant's conduct was malicious, or in reckless disregard of the plaintiff's rights.  Dang v. Cross, 422 F.3d 800, 809 (9th Cir. 2005), quoting Ninth Circuit Model Civil Jury Instruction 7.5 (2002).  "Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring another." Ninth Circuit Jury Model Jury Instruction 7.5 (2002).  "Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights, or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law." Id.

Defendants argue that punitive damages are not warranted because the evidence shows that the forced used by Cabrera, if any, caused no injury to plaintiff.  Defendants also argue that their conduct was not malicious, oppressive or reckless.

Whether defendant Cabrera choked plaintiff, and the degree and extent of injuries plaintiff suffered as a result of this incident, are disputed material facts.  If plaintiff proved his facts, he may well be entitled to punitive damages.  For that reason, defendant Cabrera is not

entitled to summary judgment as to the claim for punitive damages.

In conclusion, defendants' summary judgment motion should be denied in its entirety.

IV.  Plaintiff's Motion for Extension of Time

On September 11, 2009, plaintiff filed a motion for extension of time to file an opposition to defendants' summary judgment motion pursuant to Fed. R. Civ. P. 56(f).  Plaintiff states that he requires additional time to obtain declarations from inmates in other facilities. Because the court finds that defendants' motion should be denied, plaintiff's motion for extension of time is denied as unnecessary.[1]

Accordingly, IT IS HEREBY ORDERED that plaintiff's September 11, 2009, motion for an extension of time (no. 81) is denied;

IT IS HEREBY RECOMMENDED that defendants' August 11, 2009, summary judgment motion (no. 79) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   10/26/09

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

coa476.sj

---

[1]  The court would be reluctant to grant this motion had it determined that defendants' motion should be granted.